**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**MARTIN S. FRIEDLANDER,
INDIVIDUALLY AND AS
SUCCESSOR TRUSTEE OF THE
LEGAL DEFENSE AND
MAINTENANCE TRUST OF
CALIFORNIA,**

     **Plaintiff,**

**vs.**                                  **No. CIV 06-399  WPJ/LCS**

**LOS ALAMOS NATIONAL BANK,**

     **Defendant.**

**MEMORANDUM OPINION AND ORDER
DISMISSING COMPLAINT**

This matter comes before the Court on Defendant Los Alamos National Bank's ("LANB") Motion to Dismiss First Amended Complaint and for Abstention, filed July 10, 2006 [Doc. 12], which was filed pursuant to Rules 12(b) (6) and (7) of the Federal Rules of Civil Procedure.  As explained below, all but two of Plaintiff Martin S. Friedlander's claims must be dismissed for failure to state a claim, and the abstention doctrine does not appear to apply to the case at bar.  I conclude, however, that Plaintiff's remaining claims should also be dismissed because they are duplicative of claims currently pending in the United States Bankruptcy Court for the District of New Mexico ("Bankruptcy Court")..

**FACTUAL AND PROCEDURAL BACKGROUND**

Friedlander is an attorney from California.  He is appearing pro se and is not licensed to practice law in the state of New Mexico.  Accordingly, he maintains that he "does not seek to represent any other plaintiff other than [him]self."  Pl.'s Reply to Response in Opposition of Pro Hac Vice

Status (Doc. 11) at 1.  Friedlander filed his original complaint against LANB in federal court in California; that court transferred the case to New Mexico.  Besides considering the facts alleged in Friedlander's amended complaint, I take judicial notice of: (i) two recent and interrelated appellate opinions from the Bankruptcy Appellate Panel for the Tenth Circuit involving Friedlander; (ii) the Order transferring this case from the United States District Court for the Central District of California; and (iii) Friedlander's and the Bankruptcy Court's filings in the bankruptcy and adversary proceedings currently being litigated in the Bankruptcy Court,  *see In re Potter*, No. 05-14071 (Bankr. D.N.M.); *Los Alamos Nat'l Bank v. Potter*, No. 05-1149 (Bankr. D.N.M.); and *Potter v. Danilovic*, No. 05-1151 (Bankr. D.N.M.), that summarize the underlying factual and procedural background in this case.

**A.  The related bankruptcy appellate proceedings**.

Friedlander is a California attorney who previously represented Debtor [Jeffrey Potter] in various legal matters, including litigation in New Mexico state court.  One of the cases was a foreclosure and declaratory judgment action filed by Richard Cook ("Cook"), Debtor's business partner, against Debtor and El Llano Summit Caja Del Rio, LLC ("LLC"), a company in which Debtor owns an interest. Friedlander had associated with local counsel and was permitted to represent Debtor *pro hac vice* in New Mexico.  According to Friedlander, he advanced expenses and fees to local counsel in the amount of approximately $210,000 in connection with the various legal matters, which remain unreimbursed by Debtor. Local counsel then withdrew from the case and Friedlander was no longer able to represent Debtor.

Debtor filed a voluntary Chapter 11 bankruptcy petition on May 19, 2005. On September 29, 2005, the foreclosure and declaratory judgment proceeding was removed from New Mexico state court to the bankruptcy court by Debtor.  On December 30, 2005, pursuant to Federal Rule of Bankruptcy Procedure 7024, Friedlander filed a "Motion to Intervene on Behalf of the Defendants" ("Motion to Intervene"), claiming he has an interest in the subject of the action that is not adequately represented by existing parties.

Friedlander contends his claims against Debtor for the $210,000 in expenses and fees are secured by a lien on the assets of a trust formed by the Debtor and known

> as the "Legal Defense and Maintenance Trust of California, dated August 25, 2003" ("Trust"), to which Debtor transferred all of his assets. FN1.  The property upon which Cook seeks to foreclose is owned 50% by the Trust.  Friedlander also claims Debtor was ineffectively represented by special counsel Debtor had employed.  The bankruptcy court denied Friedlander's Motion to Intervene and he now appeals that denial to this Court.
>
> FN1.  Friedlander argues that Debtor also conveyed all of his future assets to the Trust.  Additionally, Friedlander contends he is a beneficiary of the Trust.  Friedlander also happens to be the successor trustee of the Trust.
>
> On March 27, 2006, the bankruptcy court granted Cook's motion to remand the foreclosure and declaratory judgment action to New Mexico state court.  LLC, which was then represented by Friedlander, filed a motion for reconsideration of the remand order.  On March 31, 2006, the bankruptcy court denied LLC's motion for reconsideration of the remand order.  LLC appealed the bankruptcy court's denial of its motion for reconsideration in BAP No. NM-06-042.  By order dated August 16, 2006, the motions panel of this Court dismissed LLC's appeal for lack of standing.

*In re Potter*, 2006 WL 3804567, *1 (B.A.P. 10th Cir., Dec. 27, 2006) (footnotes omitted).

Friedlander was involved in another New Mexico state-court litigation involving Potter and his corporations.

> One of the cases was a legal malpractice action filed against appellees, Robert A. Engel and Engel & Stern, LLP (collectively "Engel"), in January 2003. Friedlander had associated with local counsel and was permitted to represent Debtor *pro hac vice* in New Mexico. According to Friedlander, he advanced expenses and fees to local counsel in the amount of approximately $210,000 in connection with the various legal matters, which remain unreimbursed by Debtor.  Local counsel then withdrew from the case and Friedlander was no longer able to represent Debtor.
>
> . . . . On June 14, 2005, the legal malpractice proceeding was removed from New Mexico state court to the bankruptcy court by Debtor.  On December 26, 2005, pursuant to Federal Rule of Bankruptcy Procedure 7024, Friedlander filed a "Motion to Intervene on Behalf of the Plaintiff" ("Motion to Intervene"), claiming he has an interest in the subject of the action that is not adequately represented by existing parties.  Engel objected to the Motion to Intervene.
>
> Friedlander contends his claims against Debtor for the $210,000 in expenses and fees are secured by two liens.  First, he asserts he has a lien on the assets of a trust formed by the Debtor and known as the "Legal Defense and Maintenance Trust of

> California, dated August 25, 2003" ("Trust"), to which Debtor transferred all of his assets. Second, Friedlander asserts he has a lien on the proceeds, if any, from the legal malpractice action against Engel, arising as a result of an attorney-client retainer agreement. Friedlander also claims Debtor was ineffectively represented by special counsel Debtor had employed. The bankruptcy court denied Friedlander's Motion to Intervene and he now appeals that denial to this Court.
>
> ....
>
> . . . . As stated by the bankruptcy court, "Friedlander's connection to this proceeding is that of a creditor asserting a right to payment from property of the [Debtor], and Friedlander's interest is not threatened or even affected by the claims in this adversary proceeding against Engel et al . . . . Friedlander's interest is not an interest in the subject of this proceeding, the legal malpractice claims, it is a claim to distribution of property of the bankruptcy estate and a voting right with respect to any proposed plan." Accordingly, Friedlander's interest is protected by application of the provisions of the Bankruptcy Code.

*In re Potter*, 2006 WL 3825184, *1-4 (B.A.P. 10th Cir., Dec. 27,2006) (footnotes and citation omitted).

### B. The LANB/Potter transactions.

In 2002 LANB loaned Potter money to purchase property, known as the "Galisteo property" in Santa Fe, NM. The Galisteo property, too, was transferred to the Trust in October 2003. *See* Doc. 42, Ex. 1 at ¶ 3 (Bankruptcy Court Order in case No. 05-1149, filed 8/9/06). The Galisteo property was sold in December 2003, but a real estate broker brought suit against Potter and his LLC in state court seeking payment of unpaid commissions earned when Potter and his LLC purchased the property. *See Bogle v. Summit Inv. Co., LLC*, 107 P.3d 520, 524 (N.M. Ct. App. 2005). Sufficient funds to pay the commission claim were held in escrow from the sale of the Galisteo property. The trial court "awarded compensatory and punitive damages and held Summit and Potter jointly and severally liable." *Id.* Friedlander represented Potter in the appeal and was paid $15,000 from the proceeds of the Galisteo property sale. *See* Doc. 42, Ex. 1 at ¶ 3.

In order to accomplish the sale of the Galisteo property, Potter (represented by Friedlander) and LANB restructured Potter's debt in December 2003, just before the Galisteo property was sold. As part of a workout agreement between Potter, the Trust, and LANB, the remaining balance of the mortgage loan on the Galisteo property was restructured into "a new note secured in part by a lien on assets in the [] Trust," including any proceeds held in escrow after the sale of the Galisteo property. Doc. 1 at 3 (Order Transferring case to New Mexico, filed 5/3/06). The New Mexico Court of Appeals overturned the ruling against Potter in January 2005. *See Bogle*, 107 P.3d at 524. As a result, the escrow company has been holding over $76,000 that has not been distributed. *See* Doc. 42, Ex. 1 at ¶ 3.

LANB filed suit against Potter, the Trust, and Friedlander in state court in April 2005, seeking to enforce its lien and obtain the escrowed funds. *See* BR. No. 05-14071, Doc. 48 at 10 (Friedlander's Objection to Modifying Automatic Stay). After Potter filed for bankruptcy in May 2005, Potter contended that he had "at the very least a beneficial interest in the Trust and in the assets of the Trust, and the automatic stay applies to the Trust and the assets of the Trust." *Id.* Doc. 22 at 2 (filed 6/22/05) (Potter's Objection to LANB's Motion to Modify Stay). LANB and Potter later agreed to lift the automatic stay as to the Trust and Friedlander so that LANB could proceed in state court, *see id.*, Doc. 36, but Friedlander vehemently objected, *see id.*, Doc. 48. Friedlander asserted that, because Potter "was both a beneficiary and a claimed principle of the assets of the Trust, . . . the Trust itself constituted 'Property of the Estate.'" *Id.* at 11.

**C. The bankruptcy adversary proceeding between LANB, Potter, the Trust, and Friedlander**.

As noted above, after Potter filed for bankruptcy in 2005, Friedlander filed a secured claim

5

against the estate for $236,000, citing attorney fees and liens.  *See* Doc. 42, Ex. 1 ¶ 1.  At that time, the Trustee for the Trust was Mariana Danilovic and Friedlander was the Trust attorney.  As mentioned above, because Friedlander insisted that the state-court proceedings LANB filed against him, Potter, and the Trust in April 2005 had to be stayed, LANB filed an adversary complaint in July 2005, objecting to Friedlander's secured claim and asserting a priority on the monies held in escrow from the sale of the Galisteo property based on the workout agreement.  *See id.*  Thus, both LANB and Friedlander claimed a secured priority lien on the escrowed funds.  Friedlander filed an answer and counterclaims against LANB, asserting fraud, prima facie tort, and recission.  *See* BR No. 05-1149, Doc. 37 at 11-15.  Friedlander moved to dismiss the adversary action for lack of jurisdiction and improper venue, and to transfer the case to the Bankruptcy Court for the Central District of California in August 2005.  *See id.*, Doc. 6.  The Bankruptcy Court denied the motion on January 18, 2006.  *See id.*, Doc. 22.  Friedlander filed the federal complaint at bar on February 6, 2006, against LANB in the Central District of California, asserting exactly the same claims as he had asserted in his counterclaims in the bankruptcy and state courts.  Doc. 1 (original complaint).

In the meantime, on July 11, 2005, Potter had filed a complaint seeking to set aside the transfer of his assets to the Trust as a fraudulent conveyance.  *See* BR No. 05-1151, Doc. 1.  In March 2006, even though Potter was represented by other counsel, Friedlander filed a document entitled "Jeffrey W. Potter's Approval of Proof of Claim by Martin Friedlander . . . as a secured prior claim . . . and that said secured claim shall have priority over any proof of claim filed by LANB," and which purported to set forth the legal and factual reasons why Friedlander's lien on the Galisteo property proceeds was superior to that of LANB.  *See* BR No. 05-14071, Doc. 155.  The Bankruptcy Court struck the document, and Potter's bankruptcy counsel withdrew from representing Potter.

*See id.* Docs. 186, 190. Potter, appearing pro se, dismissed his complaint alleging fraudulent conveyance in May 2006. *See* BR No. 05-1151, Doc. 28. Friedlander became the trustee of the Trust on June 2, 2006. *See id.* Doc. 73.

The case at bar was transferred from California in May 2006; Friedlander filed an amended complaint on June 27, 2006. In July 2006 the Bankruptcy Court concluded that the adversary proceeding between LANB, Potter, the Trust, and Friedlander was "within its core jurisdiction" because (i) Potter has a beneficial interest in the Trust funds; (ii) the proceeding involved the validity and priority of competing liens on the Trust funds; and (iii) the proceeding involved the adjustment of Potter's liability on LANB's and Friedlander's claims. BR No. 05-1149, Doc. 78 at 4-5. In August 2006, the Bankruptcy Court granted summary judgment in favor of LANB in LANB's adversary proceeding based on the language of the various agreements. *See id.* Doc. 83 at 8. Friedlander subsequently filed another motion to dismiss the adversary proceeding for lack of subject matter jurisdiction and requested that the judgment be vacated. *See id.* Doc. 88. The Bankruptcy Court has not ruled on that motion, nor has it conducted proceedings on Friedlander's counterclaims for fraud, prima facie tort, and recission. The Bankruptcy Court granted the United States Trustee's motion to convert Potter's Chapter 11 proceeding to a Chapter 7 proceeding in November 2006. *See* BR 05-14071, Doc. 228.

### D. The amended complaint.

Friedlander maintains that his clients, which were "Potter and the Trust," *see* Response (Doc. 16) at 4 ("undisputed fact" #7), asked him "to negotiate a resolution of [] lien dispute[s]" between LANB and judgment creditors who claimed an interest in any Galisteo property proceeds so that the property could be sold. Amended Complaint (Doc. 8) ¶ 3, at 4 . Friedlander asserts that LANB told

him he would "have a secured 'priority' lien subject to the judgment creditor's lien" and that he told LANB's in-house counsel to put in the workout agreement that he "would have a 'prior' 'secured' lien on all of the assets to be hypothecated[1] to LANB." *Id.* He asserts that he told LANB that "he wanted to be paid for his past, present, and future legal fees and costs BEFORE LANB be paid nickle one," and that he "did not intend to work 'pro bono' for LANB, since both Friedlander and LANB were to take a lien on the same assets." *Id.* According to Friedlander, "LANB asked the Trust to guaranty payment of the balance of the second advance, subject to the 'priority' of [Friedlander's] attorney lien." *Id.* at 5. He states that neither Potter nor the Trust would have signed the new note, the guaranty, or the security agreement in favor of LANB "but for LANB's written promise to recognize the priority of [Friedlander's] lien," and that he "would not have approved the execution of the 'Workout Papers' and would not have performed one stitch of work that would have benefitted LANB" if he had any "suspicion that LANB had no intention of performing." *Id.* Friedlander asserts that LANB knew its representation that Friedlander's attorney's lien would be in first priority "on the assets to be hypothecated to LANB" was false; that it knew it was false when it was made because LANB did not intend to keep that promise; that LANB intended Friedlander to rely on its representation; that he continued performing valuable services, including the reversal of the judgment against Potter; that neither Potter nor the Trust would have given LANB a lien on the Trust assets had it not been for LANB's false representation; and that LANB filed a "spurious Declaratory Relief Action" in the federal courts "in order to obtain a court 'imprimatur' on their [sic] tortious conduct." *Id.* at 5-6. He asserts that LANB has refused to comply with his demand to deliver to the escrow

---

[1] "Hypothecate" means "[t]o pledge property as security or collateral for a debt." BLACK'S LAW DICTIONARY 743 (6TH ED. 1990).

company documents authorizing release of the escrowed funds to him, and that he has an "immediate right to possession of all funds in escrow." *Id.* ¶¶ 6-7, at 7.

In Count One of the amended complaint, Friedlander alleges conversion. *See id.* at 8. In Count Two, he alleges fraud. *See id.* at 9. In Count Three he alleges prima facie tort. *See id.* at 10. Count Four alleges rescission by "Plaintiff Trust." *See id.* Finally, Count Five (which is erroneously numbered as a second Count Four) alleges unfair trade practices pursuant to the New Mexico Unfair Practice Act, NMSA § 57-12-1 on behalf of both Friedlander and the Trust. *See id.* at 11.

## ANALYSIS

In resolving motions brought under Rule 12(b), the Court must

> accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same. Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). As with . . . motions to dismiss under Rule 12(b)(6), documents attached to the pleadings are exhibits and are to be considered . . . . *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991); Fed. R. Civ. P. 10(c).

*Park Univ. Enter., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006).

> It is true that dismissal under Rule 12(b)(6) is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice. It is also well established that dismissal of a complaint is proper only if it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.

*Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks and citations omitted).

Generally, "[w]hen evaluating a Rule 12(b)(6) motion, [the court] cannot consider information outside the complaint without converting the motion to one for summary judgment." *Peterson v.*

9

*Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). If, however, a document is not attached to the complaint, but "is referred to in the complaint, and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002) (noting that a court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity).

Friedlander referenced several state-court and bankruptcy proceedings and written agreements in his federal complaint and bases his alleged right to relief on the agreements and on work he has purportedly performed in representing the Trust in Bankruptcy Court. LANB attached to its motion to dismiss copies of the agreements and of an order from Bankruptcy Court, and Friedlander has not disputed their authenticity. The documents are central to Friedlander's federal complaint and I conclude that I may properly consider the documents without converting LANB's motion to dismiss into a motion for summary judgment. *See GFF Corp.*, 130 F.3d at 1384.

Before resolving the motion to dismiss, I must first determine which substantive law to apply. Friedlander contends that, because he initially (but improperly) filed his federal complaint against LANB in California, California law applies.[2] LANB contends that, because the California court

---

[2] After LANB pointed out in its reply brief that Friedlander failed to cite any authority in his response brief for his proposition that California law should be applied, *see* N.M.L.R. 7.5 (providing that a response brief "must cite authority in support of the legal positions advanced"), Friedlander filed a "notice of errata" claiming that his failure to cite authority was inadvertent and citing a Supreme Court case. The term "errata" is defined as "a list of errors with their corrections, inserted on a separate page of a published work." Webster's New World Dictionary of American English 462 (3rd ed. 1988). It is the plural of "erratum," which is defined as "an error discovered in a work already printed." *See id.* Clearly, Frielander's failure to properly cite authority for his position cannot be remedied by the filing of a notice of errata. Instead, as LANB

10

transferred the case to New Mexico only at Friedlander's oral request after the court concluded it had no personal jurisdiction over LANB, and because the torts of which Friedlander complains allegedly occurred in New Mexico, I must apply New Mexico law.

Under 28 U.S.C. § 1391, where jurisdiction is founded on diversity, suit may be brought "only:" (i) in the district where the defendant resides, (ii) in the district where a substantial part of the events giving rise to the claim occurred, or (iii) in a district in which the defendant is subject to personal jurisdiction at the time the action commenced. After finding both that it had no general or specific personal jurisdiction over LANB and that the events giving rise to Friedlander's suit occurred in New Mexico, the District Court for the Central District of California correctly concluded that Friedlander had improperly brought suit in California. On Friedlander's oral request, however, the California District Court summarily transferred the case to New Mexico, citing no statute or authority for doing so. The Court stated only that, "transferring the case will not prejudice either party." Doc. 1 (May 3, 2006, order transferring case). Because the suit was not properly filed in California for want of jurisdiction, the court must have transferred it to New Mexico pursuant to 28 U.S.C. § 1631, which provides in relevant part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed, and the action . . . shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

---

points out, he should have requested permission to file a surreply. *See* N.M.L.R. 7.6(b). Friedlander appears to make a habit of filing procedurally-defective documents, including filing the original complaint in the wrong district and attempting to force discovery by improperly noticing depositions and then moving for sanctions, *see* Doc. 40 at 2 (denying Friedlander's motion for sanctions and granting protective order). In the future, improperly-filed and procedurally-defective documents shall be stricken.

The Tenth Circuit has held that "§ 1631 applies in cases where either subject matter jurisdiction or personal jurisdiction is lacking." *Trujillo v. Williams*, 465 F.3d 1210, 1222 n.15 (10th Cir. 2006). The California District Court cited no factors warranting transfer instead of dismissal. *See id.* at 1223 n.16 (noting that factors warranting transfer instead of dismissal under § 1631 "include finding that the new action would be time barred; that the claims are likely to have merit, and that the original action was filed in good faith rather than filed after 'plaintiff either realized or should have realized that the forum in which he or she filed was improper'") (citations omitted). Since Friedlander obviously should have filed his suit in the first instance in New Mexico because California lacked personal jurisdiction over LANB and venue was improper there, under § 1631 "the transferee jurisdiction's substantive and choice of law rules apply so long as the transfer did in fact cure a jurisdictional defect." *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 (10th Cir. 1998). The rule that the substantive law of the transferee state applies in these circumstances is essential because otherwise, a plaintiff could forum shop for substantive law that favors him simply by initially improperly filing a case in the wrong, but favorable, district court, as Friedlander did in the case at bar.

*Van Dusen v. Barrack*, 376 U.S. 612 (1964), the only authority Friedlander cited, does not apply because that case involved a transfer under 28 U.S.C. § 1404(a). *See* 376 U.S. at 613. Section 1404(a) applies when venue is proper in the transferor court but the defendant requests a change of venue to a more convenient district "where it might have been brought" originally. *See id.* 613, 634, 639 (distinguishing between transfers under § 1404 and § 1406 and holding that transfers under § 1404 affect only the courtroom in which the litigation is conducted). Under § 1631 and *Viernow*, New Mexico substantive law must be applied.

**A. Conversion.**

To state a claim for conversion of property in New Mexico, "there must be proof of the wrongful possession, or of the exercise of a dominion over it in exclusion or defiance of the owner's right, or of an unauthorized and injurious use or of a wrongful detention after demand." *Mine Supply, Inc. v. Elayer Co.*, 411 P.2d 354, 355 (N.M. 1966) (internal quotation marks omitted). Any "proof of wrongful detention [must] amount[] to repudiation of the owner's rights, or the exercise of dominion over the property which is inconsistent with the owner's rights." *Molybdenum Corp. v. Brazos Eng'g Co.*, 472 P.2d 971, 973 (N.M. 1970). As noted in Friedlander's amended complaint and in his answer to LANB's complaint filed in bankruptcy court, either Potter or the Trust legally own the proceeds held in escrow until a court declares otherwise, and Friedlander possesses only a lien against those proceeds. *See* BR No. 05-14071, Doc. 48, Ex. 3 (Friedlander's Answer at 5 stating, "the [] Trust owned the [escrowed] funds at the time of the sale closing, and that is why LANB required the [] Trust to execute the Guaranty and the Security Agreement"). Friedlander has maintained that he is bringing no claims on behalf of any other plaintiff, and he therefore cannot state a claim for conversion on behalf of an owner - *i.e.*, Potter or the Trust. Further, no facts in the amended complaint indicate that LANB has unlawfully taken possession of, or otherwise unlawfully repudiated or taken dominion over, Potter's or the Trust's property. The claim for conversion must be dismissed.

**B. Unfair trade practices.** An unfair or deceptive trade practice violative of the New Mexico Unfair Practices Act ("UPA") is defined as

> an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or

13

> services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person.

N.M. Stat. Ann. § 57-12-2(D). "[T]he UPA contemplates a plaintiff who seeks or acquires goods or services and a defendant who provides goods or services." *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 113 P.3d 347, 352 (N.M. Ct. App. 2005). "Consistent with its purpose as consumer protection legislation, the UPA gives standing only to buyers of goods or services." *Id.* at 353. The workout agreement is between LANB and Potter. *See* Mot. to Dismiss, Ex. 1 at 1. Only Potter and LANB executed the workout agreement and Friedlander was Potter's attorney at the time. *See id.* at 10. There are no allegations that Friedlander or the Trust ever sought goods, services, or an extension of credit from LANB. The complaint, therefore, does not state a claim against LANB under the UPA. Accordingly, the claim for violation of the UPA must be dismissed.

**C. Rescission.** The amended complaint seeks rescission by the "Plaintiff Trust" on all documents executed on its behalf. Amended Complaint at 10. Friedlander, however, has asserted that he is not attempting to bring claims on behalf of any other plaintiff in his pro se status before the Court. Therefore, any claims that the Trust may have are not properly before the Court and must be dismissed.

**D. Fraud and/or prima facie tort.** LANB does not move for dismissal of Friedlander's personal claims that LANB committed fraud or a prima facie tort when it refused to recognize his allegedly superior lien on the escrowed funds after allegedly agreeing that his lien would be superior.

Instead, it requests abstention, citing no statutory or persuasive authority[3]. Because these claims are duplicative of Friedlander's counterclaims against LANB pending in Bankruptcy Court, however, I conclude that they must be dismissed.

Under the federal rules of civil procedure, if a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction," the counterclaim is compulsory and must be raised. Fed. R .Civ. P. 13(a). The purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962). In order to prevent multiple actions, a district court generally may dismiss, transfer, or stay an action "where the issues presented can be resolved in an earlier-filed action pending in another district court." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 & n.1 (5th Cir. 1985). Friedlander's counterclaims for fraud and prima facie tort against LANB arose out of the transaction creating the lien that was the subject matter of LANB's adversary action filed in the Bankruptcy Court, and the litigation of those claims does not require the presence of third parties over which the bankruptcy court does not already have, or cannot acquire, jurisdiction. Friedlander's claims are, therefore, compulsory counterclaims. *See* Fed. R. Bankr. P. 7013 (making Fed. R. Civ. P. 13 applicable to adversary proceedings).

---

[3] Abstention is appropriate in cases where (1) "a federal constitutional issue [] might be mooted or presented in a different posture by a state court determination of pertinent state law[;]" (2) "difficult questions of state law" are present that impact "policy problems of substantial public import whose importance transcends the result in the case then at bar[;]" or (3) "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 814-16 (1976) (internal quotation marks omitted).

"[T]he question whether a litigant should be able to litigate the same issue at the same time in more than one federal court is an easy one-he should not be." *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 279 (7th Cir. 1988). Litigating the same issue in two federal courts "is a waste of federal judicial resources." *Id.*; *see Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."). Therefore, I conclude that this principle applies when a litigant files the same claim in district court and bankruptcy court.

> The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issue and the same parties.

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). Friedlander's suit should be dismissed in its entirety because he has already brought his fraud and prima facie tort claims in Bankruptcy Court where they may be resolved. *Cf. Freshman v. Atkins*, 269 U.S. 121, 124 (1925) (holding that a court on its own motion may dismiss a second bankruptcy petition if the petition includes the same debts as a pending bankruptcy proceeding and noting that courts may take judicial notice "and give effect to its own records in another interrelated proceeding").

**THEREFORE, IT IS ORDERED** that Friedlander's Complaint is DISMISSED.

_____
UNITED STATES DISTRICT JUDGE